**Patsy E. WHITE and Jack E. White, Plaintiffs,**

v.

**LOWE'S HOME CENTERS, INC., and Gab Robins Business Services, Inc., Defendants.**

**No. Civ.A. 1:96–CV–144.**

United States District Court, N.D. West Virginia.

Dec. 11, 1998.

Michael J. Romano, Law Offices of David J. Romano, Clarksburg, WV, for Plaintiffs.

J. Gregg Goodykoontz, Robert E. Gifford, Steptoe & Johnson, Clarksburg, WV, Martin R. Smith, Jr., John W. Alderman, III, Steptoe & Johnson, Charleston, WV, for Defendants,

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

Defendants, Lowe's Home Centers, Inc. ("Lowe's"), and GAB Robins Business Services, Inc. ("GAB"), have moved for summary judgment as to the plaintiffs' claim for unfair trade practices on the basis that West Virginia's Unfair Trade Practices Act (the "UTPA"), W.Va.Code § 33–11–1, *et seq.,* does not apply to self-insurers such as Lowe's. The defendants also have argued that GAB, the adjuster of the third-party claims made against Lowe's, is not subject to the UTPA because it is not engaged in the practice or business of insurance, as required to sustain a claim under the Act. The plaintiffs have countered that, although additional discovery is needed as to these issues, the UTPA does apply to both of the defendants. This matter

has been fully briefed and is ripe for the Court's consideration.

### Standard for Granting Summary Judgment

Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). When a moving party supports its motion under Rule 56 with affidavits and other appropriate materials pursuant to the rule, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... the response ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.Proc. 56(e). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted).

When reviewing a motion for summary judgment, the Court must consider all of the evidence presented in the light most favorable to the non-moving party, and must resolve any issues of permissible inference in the non-movant's favor. *See Taylor v. Chesapeake & Ohio Ry. Co.*, 518 F.2d 536 (4th Cir.1975); *Collard v. Smith Newspapers, Inc.*, 915 F.Supp. 805 (S.D.W.Va.1996); *McGraw v. Norfolk & Western Ry. Co.*, 201 W.Va. 675, 500 S.E.2d 300 (W.Va.1997); *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (W.Va.1996); *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (W.Va. 1995).

### Facts and Procedural History

The record, when reviewed in the light most favorable to Patsy E. White and Jack E. White, establishes the following procedural history and facts:

1. On or about August 15, 1996, Patsy E. White and Jack E. White filed a personal injury action against Lowe's in the Circuit Court of Harrison County, West Virginia.

2. The plaintiffs' complaint contained a cause of action against GAB under the UTPA.

3. Following removal on diversity grounds, this Court conducted a trial on the plaintiffs' personal injury claims on September 29 and 30, 1997.

4. The jury returned a verdict assigning 49% of the fault to plaintiff, Patsy E. White, and 51% of the fault to defendant Lowe's, awarding damages in the amount of $27,022.18, which entitled the plaintiffs to recover a total of $14,133.93.

5. The case then proceeded on the plaintiffs' third-party "bad faith" claim against both defendants under the UTPA.

6. Lowe's is a North Carolina corporation which is in the business of owning and operating a chain of home improvement warehouse-type stores similar to the one located in Clarksburg, West Virginia, where Patsy E. White was injured.

7. Lowe's does not and has not sold insurance, issued insurance policies or contracts, adjusted insurance claims or engaged, at any time whatsoever, in the business of insurance.

8. At the time of plaintiff Patsy White's January 2, 1996 injury and through the present, Lowe's has not been a party to any insurance contract which provides coverage for the first $250,000.00 of any personal injury claim, making Lowe's a self-insured entity for the first $250,000.00 of any third-party personal injury claim.

9. For all third-party personal injury claims which exceeded the amount of $250,000.00 on January 2, 1996, Lowe's was insured by the American International Group ("AIG"); however, AIG was not involved, at any time, in the adjustment or defense of the personal injury claim of Mrs. White, because the total amount of her claim fell entirely within the Lowe's self-insured limit.

10. Lowe's and GAB have an oral contract, whereby GAB has agreed to act on Lowe's behalf in adjusting any third-party personal injury claims filed against Lowe's which fall within Lowe's self-insured limit. Plaintiff Patsy White's claim fell within this agreement, since the highest demand made on Lowe's was $65,000.00.

11. All monies paid to the Whites ultimately came from Lowe's, either directly, or as a dollar-for-dollar reimbursement from Lowe's to GAB. Similarly, all attorneys' fees incurred to date on behalf of Lowe's in the defense of the case ultimately have been paid by Lowe's.

12. GAB is a Delaware corporation whose Risk Management Services Division handled Mrs. White's claim, and which acts on behalf of self-insured entities, such as Lowe's, for the adjustment of third-party claims.

13. GAB does not and has not sold insurance or issued insurance policies.

14. At all relevant times, GAB's Risk Management Services Division handled Patsy White's claim for Lowe's as a third-party self-insured claim.

### Discussion

#### A. *Lowe's is Subject to the UTPA*

■ Although the issue of whether a self-insurer is subject to the UTPA is one of first impression under West Virginia law, in the case of *Jackson v. Donahue*, 193 W.Va. 587, 457 S.E.2d 524 (W.Va.1995), the Supreme Court of Appeals of West Virginia provided some guidance as to the significant obligations and responsibilities of self-insurers doing business in West Virginia.

The plaintiff in *Jackson* was a twenty-four year-old unauthorized passenger in a freight truck self-insured by its owner, BTI. BTI sought a decision from this federal district court that, as a self-insurer, it had no duty to afford the same coverage to the injured plaintiff as would be required of a standard liability insurer under West Virginia's motor vehicle omnibus clause statutes, W.Va.Code §§ 33–6–31(a) and 17D–4–12(b)(2). Due to the dearth of authority within West Virginia on this issue, this Court certified that question to the West Virginia Supreme Court of Appeals, which rejected BTI's claim that a self-insurer was not subject to West Virginia's laws governing the liability limits for automobile insurance policies. *Jackson* held that, for the protection of the public, a self-insurer is required to afford the same coverage under West Virginia's motor vehicle omnibus clause statutes as would a standard liability insurer. *Jackson*, 457 S.E.2d at 528–30.

The Supreme Court's discussion of the question examined in great detail the nature and purpose of self-insurance. At the outset, it defined "self-insurance" as "generally, the assumption of one's own risk and, typically, ... the setting aside of a special fund to meet losses and pay valid claims, instead of insuring against such losses and claims through an insurance policy." *Id.* at 528 (citation omitted). It then adopted the same rationale that South Carolina applied when that state extended its motor vehicle financial responsibility laws to self-insurers:

We think it was the intention of the [South Carolina] Legislature that a self-insurer provide the same protection to the public that a statutory liability policy provides. A self-insurer substitutes for an insurance policy to the extent of the statutory policy requirements.... *Id.* at 530, *citing Southern Home Ins. Co. v. Burdette's Leasing Serv., Inc.*, 268 S.C. 472, 234 S.E.2d 870, 872 (S.C.1977).

The court, thus, as a matter of public policy, obligated BTI, and all other such self-insurers doing business in West Virginia, to provide the coverage limits required under West Virginia's motor vehicle omnibus clause statutes. *Id.* at 530–31.

Although *Jackson's* discussion of self-insurance was limited to the context of motor vehicle liability insurance, the underlying public policy concepts recognized in that case are readily transferable to the context of a self-insured corporation such as Lowe's, which investigates and settles tort claims against it on its own. First, the function of self-insurance (to reduce high premium costs)

is the same whether it is being used to insure motor vehicles, workers' compensation premiums, or general third-party liability risks. Second, the statutes involved have congruent purposes: the underlying purpose of the statutory scheme at issue in *Jackson* was "to assure protection for the public ..." 457 S.E.2d at 530; similarly, the underlying purpose of the UTPA—to define and prohibit unfair methods of competition or unfair or deceptive acts or practices in the business of insurance (*see* W.Va.Code § 33–11–1 (1974))—is to protect the public. *Cf. State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516, 523 (W.Va.1995) (holding that the purpose of the West Virginia Consumer and Credit Protection Act is to protect consumers from unfair, illegal, and deceptive acts or practices). Finally, as noted in *Jackson*, statutes of this type, which are remedial in nature, must be construed broadly. *Jackson*, 457 S.E.2d at 530 (citation omitted); *see also McGraw*, *supra*.

Lowe's actions as a self-insurer clearly bring it within the ambit of the UTPA. Although it does not sell insurance, and neither issues insurance policies nor adjusts insurance claims, through its contract with GAB Lowe's adjusts third-party claims made against it with a value of $250,000.00 or less. In this respect, Lowe's (through GAB) corresponds with third-party claimants and makes payments to settle certain of these claims. Undoubtedly, under its self-insurance scheme, it also denies payment for claims. These are the types of actions that are undertaken by insurers every day. The fact that Lowe's itself rates the risks and adjusts the claims, rather than shifting the risk of loss, through a contractual relationship, to an insurance company is of no import. *Jackson* instructs that the public policy of West Virginia imposes the same duties on a self-insurer as are borne by an insurance company.

■ Ultimately, the UTPA exists for the purpose of protecting the public, and any insurer violating the provisions of the UTPA as to a third-party claimant can be held liable for such violations. *See Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (W.Va.1981) (holding that an implied private cause of action exists under West Virginia Code § 33–11–4(9)), *overruled. on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (W.Va.1994). It would be inequitable, given the strong public policy articulated in *Jackson* of not shielding self-insurers from liabilities that insurance companies face, to deprive the third-parties here of a claim under the UTPA by holding to a lesser standard a company such as Lowe's that self-insures its risks.

The defendants reliance on the case of *Richardson v. GAB Business Servs., Inc.*, 161 Cal.App.3d 519, 207 Cal.Rptr. 519 (Cal. Ct.App.1984), is misplaced. To support their position that self-insured entities, not otherwise specifically included in an unfair trade practices act, are not bound by the act when defending third-party claims, they posit that this is the rule in California. In light of the fact that California no longer recognizes a non-contractual, or third-party, statutory cause of action under its UTPA, however, *see Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (Cal.1988), *Richardson* has no precedential value here. Moreover, as already discussed, the holding in *Jackson*, when considered in light of the fact that West Virginia permits third-party claims under the UTPA, compels a different result. Thus, this Court declines to apply the rationale in *Richardson* in the case *sub judice*.

### B. *GAB is also Subject to the UTPA.*

■ The Court's ruling as to Lowe's applies also to GAB. The UTPA broadly defines a "person" subject to the UTPA as "any individual, *company*, insurer, association, organization, society, reciprocal, business trust, *corporation, or any other legal entity*, including agents and brokers." W.Va.Code § 33–11–2(a) (emphasis added). Given the Court's conclusion that a self-insurer is subject to West Virginia's UTPA, it takes no great leap of logic to conclude that, for similar policy reasons, GAB, Lowe's independent, contracted agent for claims adjusting purposes, also is accountable under the statute. The fact that "adjusters" are not specifically delineated in the statute does not operate to exclude them from its coverage. GAB investigates,

processes and handles claims under $250,000 on Lowe's behalf; its business, thus, is inextricably tied to the self-insured status of Lowe's.

In sum, because the decision in *Jackson* made clear that corporations doing business in West Virginia cannot "use [their status as self-insurers] as a shield against liability to the public under circumstances where liability insurance would be required to pay," *Jackson*, 457 S.E.2d at 531, the Court holds that the defendants, Lowe's Home Centers, Inc. and GAB Robins Business Services, Inc., are subject to West Virginia's UTPA. To hold otherwise would contravene the state's public policy as to self-insurers articulated in *Jackson*.

This Court makes no determination at this time as to the actual liability of Lowe's or GAB on plaintiffs' claim for unfair trade practices. Nevertheless, the Court does find, as a matter of law, that the plaintiffs may validly pursue their UTPA claim both as to the self-insurer, Lowe's, and its adjustor, GAB. Accordingly, the defendants' second motion for summary judgment is **DENIED.**

The Clerk is directed to transmit copies of this order to counsel of record herein.